FILED
06 DEC 18 AM 8:51
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
                                    DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| JAMES M. CHAPIN and PENNY L. CASTLEMAN, | CASE NO. 05VC1906 |
|---|---|
| Plaintiff, | ORDER |
| vs. | |
| MICHAEL J. AGUIRRE and THE CITY OF SAN DIEGO, | |
| Defendant. | |

I. Introduction

Plaintiffs James Chapin and Penny Castleman ("plaintiffs"), former Senior Deputy City Attorneys for the City of San Diego, bring federal claims for retaliation in violation of their First Amendment rights to free speech and freedom of association as well various California state law claims. Defendant Aguirre moves to dismiss the First Amended Complaint under <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315 (1943). Alternatively, defendant Aguirre moves to dismiss plaintiffs' claims for failure to state a claim. For the reasons set forth below, the motion to abstain under <u>Burford</u> is denied. The motion to dismiss the federal claims for failure to state a claim is granted in part and denied in part. The court will set a hearing on defendant Aguirre's motion to the extent that it seeks dismissal of plaintiffs' state law claims.

II. Background

The parties are well-aware of the facts, and the court need not repeat them in

detail here. However, the court will briefly outline the most relevant facts as they are alleged in the First Amended Complaint ("FAC").

Plaintiffs are former Senior Deputy City Attorneys for the City of San Diego. Defendant Michael Aguirre ("defendant Aguirre") was elected by the citizens of San Diego to be their City Attorney. As City Attorney, defendant Aguirre has the power to hire and fire Deputy City Attorneys. After being elected, defendant Aguirre publically announced that not only does he, as City Attorney, represent the City of San Diego, but he also represents the citizens of the City of San Diego.

Defendant Aguirre also informed the Administrator of the San Diego City Employees' Retirement System ("SDCERS") that he was taking over as counsel for SDCERS. Defendant Aguirre further informed the Administrator that SDCERS counsel Loraine Chapin, the wife of plaintiff Chapin, should report to defendant Aguirre for reassignment. Upon being informed of defendant Aguirre's intent to assume the position of SDCERS counsel, Loraine Chapin informed defendantAguirre that she did not work for him and that she would not report to him for reassignment as he had requested. Subsequently, defendant Aguirre informed plaintiff Chapin that he would be fired if he did not convince his wife to quit her position as SDCERS counsel. Chapin refused, and as a result of his refusal, he was repeatedly threatened with termination.

At a January 13, 2005 Civil Trial Unit meeting, plaintiff Castleman asked defendant Aguirre for direction as to how the assistant city attorneys should adhere to their ethical responsibilities regarding client confidences while at the same time complying with defendant Aguirre's policy that the City Attorney represents the public as well as the City itself. FAC ¶ 38. Plaintiff Castleman expressed concerns about complying with her ethical obligations as a lawyer, and plaintiff Chapin expressed similar concerns. FAC ¶ 38.

At about the same time, plaintiffs Chapin and Castleman were involved with organizing a labor union.

1  Plaintiffs Chapin and Carpenter were fired by defendant Aguirre soon thereafter.

## III. Analysis

### A. Burford Abstention

Burford abstention "is concerned with protecting complex state administrative processes from undue federal interference . . . ." New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 362 (1989). Pursuant to Burford, a federal court may "decline to adjudicate an essentially local issue arising out of a complicated state regulatory scheme." International Broth. of Elec. Workers, Local Union No. 1245 v. Public Service Com'n of Nevada, 614 F.2d 206, 211 (9th Cir. 1980); see also Ripplinger v. Collins, 868 F.2d 1043, 1049 n. 5 (9th Cir. 1989). "The power to dismiss recognized in Burford represents an 'extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it.'" Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 728 (1996) (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976)); see also Riplinger, 868 F.2d at 1048 ("Abstention from the exercise of federal jurisdiction is the exception rather than the rule."). The Supreme Court has summed up the Burford doctrine as follows:

> Where timely and adequate state-court review is available, a federal court *sitting in equity* must decline to interfere with *the proceedings or orders of state administrative agencies*: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

New Orleans Public Service, 491 U.S. at 361 (quoting Colorado River Water Conservation Dist., 424 U.S. at 814) (emphasis added). In addition, under Ninth Circuit law, the following factors must be present in order for a federal court to abstain under Burford: "1) the state must have concentrated suits involving the local issue in a particular court; 2) the federal issues must not be easily separable from complicated

state law issues with which the state courts may have special competence; and 3) federal review might disrupt state efforts to establish a coherent policy." <u>Fireman's Fund Ins. Co. v. Quackenbush</u>, 87 F.3d 290, 296 (9th Cir. 1996). If <u>Burford</u> abstention is warranted, then dismissal, not a stay, is generally required. <u>Poulos v. Caesars World, Inc.</u>, 379 F.3d 654, 671 (9th Cir. 2004).

### Abstention is Not Appropriate Given Plaintiffs' Damages Claims

Defendants have failed to demonstrate that the requirements for <u>Burford</u> abstention are met here. As the Supreme Court explained in <u>Quackenbush v. Allstate Insurance Co.</u>, under Supreme Court precedent, "federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary." 517 U.S. at 731; <u>see also</u> <u>Burford</u>, 319 U.S. at 317-18 (noting that "a federal equity court" has discretion to decline to exercise jurisdiction in certain cases). Here, in their prayer for relief, plaintiffs request back pay, loss of future wages, loss of past and future benefits, emotional distress damages, attorneys fees and costs, punitive damages, civil fines and penalties, "injunctive relief according to proof," and "such other relief as the Court considers just and proper." Although plaintiffs include generalized claims for equitable relief, considering the factual basis for their claims (plaintiffs were allegedly terminated for exercising their federal and state constitutional and statutory rights) and the specifically-plead request for damages, it is clear that the crux of the relief sought is legal, not equitable, in nature.[1]

Defendants cite <u>Amerson v. Iowa</u>, 94 F.3d 510, 513 (8th Cir. 1986) as authority for the proposition that the court should dismiss the entire suit regardless of the fact that plaintiffs mainly seek damages because damages cannot be awarded without a declaration that defendants acted in an unconstitutional manner. Besides being out-of-

---

[1] It is difficult to imagine what type of equitable relief would be warranted if it is determined that plaintiffs' rights were violated. Because plaintiffs have already been terminated, a prospective injunction is not at issue. Moreover, it is difficult to conclude that plaintiffs desire to be reinstated in their former positions as long as defendant Aguirre remains in office.

circuit authority, Amerson is not on point and does not suggest that Burford abstention is warranted here.

In Amerson, a mother brought a § 1983 action seeking declaratory and injunctive relief and damages against various government officials and entities alleging tortious interference with her parental rights and violation of the Individuals with Disabilities Education Act ("IDEA"). The district court granted summary judgment on the IDEA claims and dismissed the remainder of the lawsuit based on the abstention principles set forth in Younger v. Harris, Burford and Colorado River Water Conserv. Dist. The Eighth Circuit affirmed. The Eighth Circuit found it important that (1) resolution of the plaintiff's remaining claims would have required the district court to reconsider a state court judgment terminating the plaintiff's parental rights, and (2) several state court proceedings and appeals were pending at the time of the district court's decision to abstain.

Moreover, noting that most of the plaintiff's remaining claims for relief were equitable in nature, the Eighth Circuit concluded that dismissal was appropriate despite the fact that the plaintiff in her prayer also sought relief for "unspecified damages." The court explained that a "close reading" of Quackenbush v. Allstate Ins. Co. "indicates that a plaintiff's *incidental insertion* of a general claim for damages will not suffice to prevent the dismissal of a § 1983 case *where the damages sought cannot be awarded without first declaring unconstitutional a state court judgment on a matter firmly committed to the states*." Amerson, 94 F.3d at 513 (emphasis added). Amerson is not, as defendants suggest, authority for the proposition that a court may abstain from hearing claims for damages where the court must, to resolve the claim, determine whether the defendant acted in an unconstitutional manner. Rather, it is authority for the proposition that a federal court should dismiss an action where the plaintiff seeks to challenge a judgment entered by a state court on a matter traditionally reserved for the states even when the plaintiff's complaint raises incidental legal claims.

Here, plaintiffs' predominant claims are ones for legal, not equitable relief, and

plaintiffs' request for unspecified equitable relief, not their request for damages, could most appropriately be termed "incidental." Moreover, unlike in <u>Amerson</u>, resolution of plaintiffs' constitutional claims here does not require this court to reconsider a final judgment of a state court, let alone a final judgment on a matter that is traditionally one of state concern. Given that any equitable claims that plaintiffs may be asserting are merely incidental to plaintiffs' damages claims, it is inappropriate to apply the <u>Burford</u> doctrine here.

Finally, the court notes that although a federal court is precluded from abstaining, <i>i.e.</i>, dismissing an action, where a plaintiff is seeking damages rather than equitable relief, it may nonetheless enter a stay of the action pending resolution of a state-law issue. See <u>Jefferson County, Ala. v. Acker</u>, 527 U.S. 423, 435 n. 5 (1999) (construing <u>Quackenbush v. Allstate Ins. Co.</u>). However, defendants have failed to identify an issue of state law that would most appropriately be decided by the state courts prior to the resolution of plaintiffs' claims in this forum.

### By Exercising Jurisdiction, the Court Will Not Be Interfering with the Proceedings or Orders of State Administrative Agencies

An additional reason for refusing to abstain under <u>Burford</u> is that defendants have failed to demonstrate that by exercising jurisdiction over plaintiffs' claims, this court would be interfering with the proceedings or orders of a state administrative agency. As the Supreme Court has explained, "[w]hile <u>Burford</u> is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process . . . ." <u>New Orleans Public Service</u>, 491 U.S. at 362. In fact, <u>Burford</u> abstention is not necessarily required even in "cases where there is a 'potential for conflict' with state regulatory law or policy[,]" <u>Id.</u> at 362 (quoting <u>Colorado River Water Conservation Dist.</u>, 424 U.S. at 815-16), if the federal adjudication "would not disrupt the State's attempt to ensure uniformity in the treatment of an 'essentially local problem.'" <u>Id.</u> (quoting <u>Alabama Pub. Serv. Comm'n</u>, 341 U.S. at 347).

Here, the federal adjudication of plaintiffs' claims would not disrupt the State of California's attempt to ensure uniformity of treatment of an "essentially local problem." Defendants masterfully attempt to characterize plaintiffs' claims as "unfair labor practice claims, governed by the regulatory system set forth in the Meyers-Milias Brown Act, Cal. Gov. Code § 3500, *et seq*. or matters of state attorney-client privilege regulation." City of San Diego's Memorandum at 7; 1-3. However, while it is true that unfair labor practice claims and claims for violation of the ethical rules applicable to lawyers are governed by state administrative processes, the existence of such administrative processes is not sufficient to warrant abstention under <u>Burford</u> because the adjudication of plaintiffs' claims would not cause any disruption to those administrative processes.

For example, although plaintiffs claim that they were retaliated against for speaking on the topic of how the attorney-client privilege should be applied in the City Attorney's Office, in resolving plaintiffs' retaliation claims under both the Federal Constitution and state law, the court need not consider the body of rules governing attorney conduct in order to determine whether plaintiffs' First Amendment rights were violated. In other words, it need not determine how the attorney-client privilege should have been applied. Rather, the court must simply determine whether state or federal constitutional and decisional law protects employees' speech on such a topic.

Moreover, plaintiffs are not bringing a direct claim for violation of the Meyers-Milias-Brown Act ("MMBA") but, rather, looking to the MMBA as one of several sources of public policy, which public policy plaintiffs contend was violated by their termination for engaging in the organization of a labor union. Although the MMBA may, as defendants suggest, be a "comprehensive statutory regulation" that demonstrates "California's desire to have a unified policy concerning its public employees,"City of San Diego's Memorandum at 9; 10-12, it does not follow that the court will be interfering with California's regulatory system by hearing plaintiffs' claims.

Because plaintiffs are alleging wrongful termination in violation of public policy, the issue with respect to the MMBA is whether it prohibits employers from discharging employees for engaging in union organizing activities and, if so, if it is a source of public policy that can support a claim for wrongful termination. In answering these questions, no complicated interpretation of the MMBA is required. As defendants' own papers acknowledge, California Gov't Code § 3506 prohibits employers from "discriminat[ing] against public employees because of their exercise of their rights under Section 3502," which rights include "the right to form, join, and participate in the activities of employee organizations of their own choosing for the purpose of representation on all matters of employer-employee relations." Cal. Gov't Code § 3502. Thus, the only real issue is whether the MMBA is a source of public policy that should be considered in determining whether plaintiffs' termination was in violation of public policy. Whether a state law is such a source of public policy is routinely determined by courts rather than state administrative bodies. See, e.g., Jersey v. John Muir Medical Center, 97 Cal.App.4th 814, 821-822 (2002). Thus, by considering plaintiffs' wrongful discharge claims, this court would not be interfering with a state administrative process. Accordingly, Burford abstention is not warranted.

**The Ninth Circuit Factors Do Not Warrant Abstention**

Nor does application of the Ninth Circuit factors suggest that abstention is warranted. Again, under Ninth Circuit law, the following factors must be present in order for a federal court to abstain under the Burford doctrine: "1) the state must have concentrated suits involving the local issue in a particular court; 2) the federal issues must not be easily separable from complicated state law issues with which the state courts may have special competence; and 3) federal review might disrupt state efforts to establish a coherent policy." Fireman's Fund Ins. Co. v. Quackenbush, 87 F.3d at 296. Although California has concentrated certain suits for violation of the MMBA in the Public Employment Relations Board, see Calif. Gov't Code §§ 3441.3(i), 3541.5, again, the present suit is not a suit for violation of the MMBA but, rather, a suit

involving federal First Amendment claims and state law wrongful termination claims.

Moreover, the First Amendment claims are easily separable from state law issues regarding labor relations and attorney ethics. Although California regulates labor relations and attorney ethics, the court need not consider California law in these areas in order to resolve plaintiff's First Amendment issues. Moreover, as the Ninth Circuit has noted, "constitutional challenges based on the first amendment right of free expression are the kind of cases that the federal courts are particularly well-suited to hear. That is why abstention is generally inappropriate when first amendment rights are at stake." Porter v. Jones, 319 F.3d 483, 492 (9th Cir. 2003) (quoting J-R Distribs., Inc. v. Eikenberry, 725 F.2d 482, 487 (9th Cir. 1984)); see also Ripplinger v. Collins, 868 F.2d 1043, 1049 n. 5 (9th Cir. 1989) (finding Burford abstention inappropriate in case challenging state statute on First Amendment grounds; explaining that "[a] case involving a first amendment challenge to a state statute is unlikely to implicate purely local issues that the state courts may be especially competent to deal with").

Finally, federal review of plaintiffs' First Amendment claims, which claims are predicated upon plaintiffs' federal right to speak freely and associate freely without unwarranted government reprisal, will not disrupt state efforts to establish a coherent policy regarding attorney ethics and labor union organization. Attorney ethics was the topic of conversation upon which plaintiffs were speaking, but the court need not make any determination regarding the ethical issue upon which plaintiffs were speaking in order to resolve plaintiffs' First Amendment claims. Similarly, the fact that plaintiffs' First Amendment claims may be "littered with references to the DCAA, its leaders, its meetings, activities and discussions, and rights to associate with it or fellow DCA's" does not "require an application of the MMBA" as defendants contend. City of San Diego's Memorandum at 9:19-10:4. A determination that plaintiffs were exercising rights granted by the MMBA on its face and a determination that the MMBA is a source of public policy for wrongful termination purposes will not in any way disrupt California's efforts to establish policy regarding labor union organization.

In summary, despite defendant's assertions to the contrary, plaintiffs' First Amended Complaint raises garden-variety First Amendment and wrongful termination claims for which plaintiffs seek damages. Although the complaint contains detailed factual allegations that indicate that plaintiffs were engaged in conversations regarding topics that are the subject of complex state regulation, the court need not delve into the law regarding these topics to resolve plaintiffs' claims. Similarly, although plaintiffs were engaged in labor union activity, which activity is protected by a complex state regulatory scheme, the court need not resolve complex issues of state labor union law in order to resolve the wrongful termination claims plaintiffs assert here. There is simply no basis for concluding that it would be appropriate to apply this extraordinary doctrine here.

### B.  Motion to Dismiss for Failure to State a Claim

**Motion to Dismiss Count 1**

In Count 1, plaintiffs allege that defendant Aguirre retaliated against them in violation of their First Amendment right to speak on matters of public concern. Specifically, plaintiffs allege that there was public debate about defendant Aguirre's role as City Attorney and that because defendant Aguirre had announced he was representing the citizens of San Diego as well as the City of San Diego, "some City employees and department managers refused to meet with City investigators and Deputies" because they were concerned that information they provided would not be protected by the attorney-client privilege. FAC ¶ 62. Plaintiffs allege that "without cooperation from City employees, the Deputies could not and cannot adequately represent the City." FAC ¶ 62. Plaintiffs Chapin and Castleman were concerned about how defendant Aguirre's proclamation "would impact the attorneys' ethical duties and obligations[.]" FAC ¶ 61. Thus, "Chapin and Castelman, veteran public attorneys, sought to provide leadership by attempting to bring these issues to the attention of Aguirre[,]" their boss. Plaintiffs spoke "about the application of the attorney-client privilege and the impact it was having on the office of the City Attorney and among the

city employees who are crucial to the Deputies carrying out their jobs . . . ." FAC ¶ 64. According to plaintiffs, their termination was substantially motivated by this speech. FAC ¶ 64.

First, defendant Aguirre contends that he is entitled to dismissal of this claim because plaintiffs are policy-making or "confidential" employees who may be dismissed for political reasons without violating the First Amendment. See <u>Fazio v. City and County of San Francisco</u>, 125 F.3d 1328, 1332 (9th Cir. 1997); see also <u>Biggs v. Best, Best & Krieger</u>, 189 F.3d 989 (9th Cir. 1999). "[T]he term policymaker as used in this context does not mean 'one who makes policy.'" <u>Fazio</u>, 125 F.3d at 1333. Instead, "the term refers to a position in which political considerations are 'appropriate requirement[s] for the effective performance of the public office involved.'" <u>Id.</u> (quoting <u>Branti v. Finkel</u>, 445 U.S. 507, 519 (1980)). In determining whether a person occupies a policymaking position, the court should consider the nature of the individual's job responsibilities as well as the individual's "'pay, technical competence, power to control others, authority to speak in the name of the policymakers, public perception, influence on programs, contact with elected officials, and responsiveness to partisan politics and political leaders.'" <u>Biggs</u>, 189 F.3d at 995 (quoting <u>Fazio</u>, 125 F.3d at 1334 n. 5). Almost all cases to consider whether attorneys in city government are policymakers subject to patronage discharges have held that they are. See <u>Biggs</u>, 189 F.3d at 995 ("Many cases have addressed the role of attorneys in city government, and almost all of them have found such attorneys to be policymakers subject to patronage discharges."). However, given that a determination that a government employee is a policy-maker requires a fact-intensive inquiry, that determination is not properly made here in the context of a motion to dismiss. Cf. <u>Fazio</u>, 125 F.3d 1328 (deciding issue on summary judgment); <u>Biggs</u>, 189 F.3d 989 (same).

Alternatively, defendant Aguirre seeks dismissal of this claim on the ground that plaintiffs were not speaking on a matter of public concern. The speech of public employees is only protected by the First Amendment if their speech touches on a matter

- 11 -

05CV1906

of public concern, and the government employer does not have "an adequate justification for treating the employee differently from any other member of the general public." Garcetti v. Ceballos, 126 S.Ct. 1951, 1958 (2006). "A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations." Id. Whether a government employee engaged in protected speech is an issue of law for the court. See Connick v. Myers, 461 U.S. 138 n. 7 (1983).

Here, plaintiffs' representations to the contrary notwithstanding, as a matter of law they were not speaking on a topic of public concern. As the Supreme Court has explained, a court must "examine the 'content, form, and context of a given statement'" in order to determine whether an employee's speech addressed a matter of public concern. City of San Diego v. Roe, 543 U.S. 77, 83 (2004) (quoting Connick, 543 U.S. at 146-47). "[T]he standard for determining whether expression is of public concern is the same standard used to determine whether a common-law action for invasion of privacy is present." Id. Invasion of privacy cases such as Cox Broadcasting Corp. v. Cohn, 420 U.S. 469 (1975) and Time, Inc. v. Hill, 385 U.S. 374, 387-388 (1967) "make clear that public concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication." Roe, 543 U.S. 83-84. As the Supreme Court has explained:

> To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark – and certainly every criticism directed at a public official – would plant the seed of a constitutional case. While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs.

Connick, 461 U.S. at 149.

As defendant Aguirre correctly notes, the issue is not whether *he* was speaking on a topic of public concern but, rather, whether *plaintiffs* were speaking on a topic of public concern. As is clear from plaintiffs' own allegations, plaintiffs were not voicing

an opinion as to whether the San Diego City Attorney does or should represent the citizens of San Diego as well as the City itself. Instead, plaintiffs were voicing concerns "about the application of the attorney-client privilege and the impact it was having on the office of the City Attorney and among the city employees . . . ." FAC ¶ 64. See FAC ¶¶ 38, 59-62. Such matters may be of important concern to those in the City Attorney's Office, but such matters are not matters of public concern, as evidenced by review of the Supreme Court case of Connick, which involved the termination of a an assistant district attorney who engaged in speech whose content was very similar to that of plaintiffs' here.

In Connick, Myers, an assistant district attorney, was told that she was going to be transferred so that she would be prosecuting different types of cases in a different section the court. Myers objected, but she was told that she was going to be transferred anyway. Myers then "prepared a questionnaire soliciting the views of her fellow staff members concerning office transfer policy, office morale, the need for a grievance committee, the level of confidence in supervisors, and whether employees felt pressured to work in political campaigns" Connick, 461 U.S. at 141. The questionnaire was disseminated to 15 assistant district attorneys. Upon learning of this, the district attorney fired Myers. The court concluded that "with but one exception, the questions posed by Myers to her coworkers do not fall under the rubric of matters of 'public concern.'" Id. at 148. The Court concluded that the questions "pertaining to the confidence and trust that Myers' coworkers possess in various supervisors, the level of office morale, and the need for a grievance committee" were not "questions are of public import in evaluating the performance of the District Attorney as an elected official." Id. The one exception was the question regarding whether assistant district attorneys felt pressured to work on campaigns. It explained that "[w]hile discipline and morale in the workplace are related to an agency's efficient performance of its duties, the focus of Myers' questions [wa]s not to evaluate the performance of the office but rather to gather ammunition for another round of controversy with her superiors." Id.

The Court concluded that

> Myers' questionnaire touched upon matters of public concern in only a most limited sense; her survey, in our view, is most accurately characterized as an employee grievance concerning internal office policy. The limited First Amendment interest involved here does not require that Connick tolerate action which he reasonably believed would disrupt the office, undermine his authority, and destroy close working relationships.

Id. at 154. Therefore, the Court held that Myers' discharge "did not offend the First Amendment." Id.

Here, as in Connick, plaintiffs' speech is most accurately characterized as an employee grievance concerning internal office policy and office morale. Plaintiffs' speech concerned internal office policy, as plaintiffs admit that they were concerned with how defendant Aguirre's new public policy of representing the citizens of San Diego would by applied in the office and how it would affect the attorneys in the City Attorney's office in terms of interaction with city employees and in terms of the attorneys' need and ability to comply with their professional ethical obligations. And, like the plaintiff in Connick, plaintiffs were speaking on issues of office morale by speaking "about the application of the attorney-client privilege and the impact it was having on the office of the City Attorney and among the city employees who are crucial to the Deputies carrying out their jobs . . . ." FAC ¶ 64. Such speech is not protected under the First Amendment because it is not speech on an issue "of public import in evaluating the performance of the District Attorney as an elected official." Id.

Plaintiffs' speech is also similar to that in Garcetti. As explained in Garcetti, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 126 S.Ct. at 1960. Here, as in Garcetti, plaintiffs were speaking as attorneys "fulfilling a responsibility to advise [their] supervisor about how best to proceed with"

representation.  Id.  As plaintiffs' own allegations reveal, they were not speaking as citizens for First Amendment purposes but, rather, they were speaking as "veteran public attorneys" who "sought to provide leadership" in the office by bringing to their boss' attention issues regarding the performance of their jobs.   Again, the First Amendment does not protect such speech by a public employee, and therefore, if plaintiffs were dismissed for such speech, their dismissal does not offend the First Amendment.   Accordingly, defendant Aguirre is entitled to dismissal of Count 1.

**B.     Motion to Dismiss Count 2**

In Count 2, plaintiffs allege that they were retaliated against by defendant Aguirre for exercising their First Amendment right to join and participate in a labor union. Defendant Aguirre moves for dismissal of this count on the ground that plaintiffs must show that their associational conduct touches on a matter of public concern.  However, at this juncture, the court cannot say that, as a matter of law, plaintiffs have not alleged a viable claim.  See Boals v. Gray, 775 F.2d 686, 693 (6th Cir. 1985) ("We have no doubt that an employee who is disciplined solely in retaliation for his membership in and support of a union states a valid first amendment claim under Connick and Pickering.").

**C.     Motion to Dismiss Count  3.**

In Count 3, plaintiff Chapin brings a claim for retaliation in violation of his First Amendment right of freedom of intimate association.  Plaintiff Chapin  contends that defendant Aguirre retaliated against him in violation of his First Amendment right by "repeatedly threaten[ing] [him] with his job if his wife did not cease her professional relationship with SDCERS and when he ultimately terminated [him] because of his marriage."  FAC ¶ 77.  Defendant Aguirre moves to dismiss Count 3 on the ground that the Ninth Circuit has not recognized an intimate association right under the First Amendment so that even if there is such a right, defendant Aguirre is entitled to dismissal of Count 3 because such right is not clearly established.

As the Supreme Court has explained, its decisions

> have referred to constitutionally protected "freedom of association" in two distinct senses. In one line of decisions, the Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty. In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment-speech, assembly, petition for the redress of grievances, and the exercise of religion. The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties.

Roberts v. U.S. Jaycees, 468 U.S. 609, 617-18 (1984). The Supreme Court has thus distinguished between "freedom of intimate association," which is a liberty interest protected by the due process clause, and "freedom of expressive association," which is protected by the First Amendment. Id. at 618-622; see also Benigni v. City of Hemet, 879 F.2d 473, 477 (9th Cir. 1988) (explaining that the First Amendment protects "the right to associate for the purpose of engaging in those expressive activities protected by the First Amendment" such as "speech, assembly, petition for the redress of grievances, exercise of religion"); IDK, Inc. v. Clark County, 836 F.2d 1185, 1191-92 (9th Cir. 1988) (recognizing that "the Supreme Court has most often identified the source of the protection [of highly personal relationships] as the due process clause of the fourteenth amendment, not the first amendment's freedom to assemble"). In light of the foregoing, defendant Aguirre is correct that plaintiff Chapin cannot maintain a First Amendment claim for violation of the right of freedom of intimate association. Accordingly, the motion to dismiss Count 3 is granted.

### D.     Motion to Dismiss Count 4

In Count 4, plaintiffs Chapin and Castleman allege that defendant Aguirre violated their First Amendment right of association by (1) allowing Castleman to

continue her employment with the City only on the condition that she not speak to anyone employed by the City of San Diego other than with respect to the ongoing trial in which she was participating; (2) forbidding Chapin to discussion the conditions of his employment with anyone; (3) excluding both plaintiffs from a department-wide civil trial deputy meeting; and (4) forbidding both plaintiffs from attending a farewell luncheon for two of their colleagues. Because this is a hybrid speech/association claim, plaintiffs' alleged speech/associational activities must touch on a matter of public concern, Hudson v. Craven, 403 F.3d 691, 698 (9th Cir. 2005), which they do not do. Accordingly, the motion to dismiss Count 4 is granted.

## VI. Conclusion

For the reasons set forth supra, the motion to abstain on Burford grounds is denied. The motion to dismiss is granted with respect to Counts 1, 3 and 4 and denied with respect to Count 2. Oral argument on defendant Aguirre's motion to dismiss the state law claims is hereby set for Tuesday, January 16, 2007 at 2:00 p.m. in Courtroom 5. Oral argument on the City's motion to dismiss is hereby set for January 22, 2007 at 2:00 p.m. in Courtroom 5.

**IT IS SO ORDERED.**

DATED: 12\14 ,2006

JOHN S. RHOADES, SR.
United States District Judge

cc: All parties