FILED

2007 JUN -7  AM 8: 20

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____RM_____DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES M. CHAPIN and PENNY L. CASTLEMAN, <br><br> Plaintiff, <br><br> vs. <br><br> MICHAEL J. AGUIRRE and THE CITY OF SAN DIEGO, <br><br> Defendant. | CASE NO. 05CV1906 R (POR) <br><br> ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' STATE LAW CLAIMS |

## I.     Introduction

Defendants the City of San Diego ("the City") and Michael Aguirre (collectively "defendants") bring a motion to dismiss the state law claims of Plaintiffs James Chapin and Penny Castleman (collectively "plaintiffs") for retaliation in violation of California Government Code § 12940, *et seq.*, retaliation in violation of California Labor Code § 1102.5, discrimination and retaliation in violation of California Labor Code § 232.5, wrongful termination in violation of public policy, and defamation.  For the reasons set forth *infra*, the motion is granted in part and denied in part.

## II.     Background

Construing the First Amended Complaint in the light most favorable to plaintiffs, the relevant facts are as follows:

1   Plaintiffs are former Senior Deputy City Attorneys for the City of San Diego. Plaintiffs
2   were trial attorneys for the City and "had no power to control employees or officials, no
3   authority to speak in the name of policymakers, no influence on City programs and [were] in
4   no position to participate in partisan politics or respond to political leaders." FAC ¶¶ 9, 10.
5   Defendant Aguirre was elected by the citizens of San Diego to be the City Attorney.
6   After being elected, defendant Aguirre began investigating a controversy regarding City
7   employee pension benefits and harassing and retaliating against City employees who did not
8   share his view regarding the controversy. FAC ¶ 12. Defendant Aguirre also informed the
9   Administrator of the San Diego City Employees' Retirement System ("SDCERS") that he was
10  taking over as counsel for SDCERS and that SDCERS counsel Loraine Chapin, the wife of
11  plaintiff Chapin, should report to defendant Aguirre for reassignment. FAC ¶¶ 14, 15. Upon
12  being informed of defendant Aguirre's intent to assume the position of SDCERS counsel,
13  Loraine Chapin informed defendant Aguirre that she did not work for him and that she would
14  not report to him for reassignment as he had requested. Subsequently, defendant Aguirre
15  informed plaintiff Chapin that he would be fired if he did not convince his wife to quit her
16  position as SDCERS counsel. Chapin refused, and as a result of his refusal, he was repeatedly
17  threatened with termination. FAC ¶¶ 16, 17, 29. "Aguirre also told Chapin, under threat of
18  termination, that he was not to express his feelings about the working conditions in the office
19  and that he could not express any legal opinions other than Aguirre's." FAC ¶ 16; see also
20  FAC ¶ 30.
21  During this same time, plaintiffs Chapin and Castleman were involved in organizing
22  a labor union known as the Deputy City Attorneys' Association ("DCAA").
23  Plaintiff Chapin was the President of the DCAA and plaintiff Castleman was the Recording
24  Secretary. FAC ¶ 22. "Each was instrumental in forming the union." FAC ¶ 22.
25  At a meeting on December 21, 2004, the DCAA Executive Board "met and discussed
26  the necessity of the DCAA meeting with Aguirre because of his threats to fire Chapin due to
27  his wife's role as counsel for SDCERS and other transitional concerns, such as Aguirre's stated
28  insistence he represents the taxpayers of the City of San Diego, even if that 'representation'

1   was adverse to the City of San Diego and its Departments and employees." FAC ¶ 22.

2   "On January 5, 2005, Castleman sent an email to all attorneys in the City Attorney's

3   office advising them of a DCAA meeting scheduled for January 13." FAC ¶ 32. Minutes

4   later, defendant Aguirre called plaintiff Castleman to his office and "complained that

5   Castleman was not supporting him, citing her protest of his treatment of" plaintiff Chapin.

6   FAC ¶ 33.

7   On January 13, 2005, the Civil Trial Unit held a meeting. At the end of the meeting,

8   plaintiff Castleman stated that there was a need to address the issue of the attorney-client

9   privilege given defendant Aguirre's public pronouncement that he represents the taxpayers of

10   San Diego in addition to the City itself. FAC ¶ 38. Later that day, the DCAA met. FAC ¶ 39.

11   "The focus of that meeting was to discuss the DCAA certification process, ethical issues

12   caused by Aguirre's public pronouncement that the City Attorney's client included taxpayers,

13   and other concerns." FAC ¶ 39.

14   On January 24, 2005, defendant Aguirre told plaintiff Castleman that she was fired and

15   that she should vacate her office immediately despite the fact that she was to begin a trial

16   involving eight police officers the following week. FAC ¶ 50. Subsequently, the Chief of

17   Police requested that plaintiff Castleman be allowed to proceed with the trial. FAC ¶ 51.

18   Defendant Aguirre agreed but instructed others to inform plaintiff Castleman that "she would

19   be allowed to continue employment with the City of San Diego on the condition that she not

20   speak to anyone employed by the City of San Diego about any matter other than the trial."

21   FAC ¶ 51. "She was also told she could not tell anyone in the City of San Diego about the

22   foregoing condition of employment." FAC ¶ 51. "She was further told that she would be

23   terminated immediately, even in the middle of the trial, if it was learned she violated these

24   instructions." FAC ¶ 51.

25   On January 26, plaintiff Castleman was given a severance agreement which she

26   declined to sign. FAC ¶ 52. That agreement provided that Castleman "could remain employed

27   until 5:00 p.m. on the day she received a verdict in the trial, and that during the remainder of

28   her time with the City she was to refrain from discussing with any other City employees the

1  status of her employment and/or any matter not related to the trial." FAC ¶ 52.

2  On January 26, plaintiff Chapin was informed he was fired. FAC ¶ 53. He was advised

3  that, effective that afternoon, "he was not allowed to be in the office after hours or on

4  weekends and that he would be shadowed one hundred percent of the time during working

5  hours through February 4." From January 26 until February 3, his last day of work, another

6  attorney who was recently hired by defendant Aguirre "sat in Chapin's office, followed him

7  to meetings and to court, and listened to all of his phone calls and office conversations with

8  attorneys and staff visiting his office." FAC ¶ 53.

9  On January 28, 2006, defendant Aguirre called a mandatory meeting of the trial deputies

10  but specifically excluded plaintiffs. FAC ¶ 54. At that meeting, defendant Aguirre made false

11  statements about plaintiff Castleman. FAC ¶ 54.

12  Plaintiff Castleman's last day of work was February 28, 2005, after the conclusion of

13  her trial.  FAC ¶ 55.

14
   **II.    Analysis**
15
        **A.    Defendants' Motion to Dismiss Count Five (Retaliation in Violation of**
16             **Gov't Code § 12940)**

17  In Count Five, plaintiffs allege retaliation in violation of California Government Code

18  § 12940(a) and (h). Section 12940(h) prohibits terminating an employee who has opposed an

19  unlawful or potentially unlawful employment practice prohibited by the California Fair

20  Employment and Housing Act ("FEHA"), codified at Government Code § 12900, *et seq.*

21  Section 12940(a) makes it an unlawful employment practice to discharge a person from

22  employment based on marital status. Plaintiffs allege that defendant Aguirre violated these

23  statutory provisions by "retaliat[ing] against Chapin and Castleman because they challenged

24  Aguirre's threats to terminate Chapin because of his marital status." FAC ¶ 94.

25  To plead a claim for retaliation, plaintiffs must plead that they were retaliated against

26  for complaining of conduct that either is prohibited by FEHA or that they reasonably and in

27  good faith believed was prohibited by FEHA. Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th

28  1028, 1043 (2005). As long as the mistake was reasonable and in good faith, it does not matter

- 4 -

1   whether the mistake was one of law or fact.  See Miller v. Department of Corrections, 36

2   Cal.4th 446, 475 (citing Moyo v. Gomez, 40 F.3d 982, 985 (9th Cir. 1994)).

3          On the facts as plead, plaintiffs could not have reasonably believed that they were

4   complaining of conduct prohibited by FEHA.  As explained in Chen v. County of Orange, 96

5   Cal.App.4th 926 (2002), FEHA prohibits discrimination based on one being single or married.

6   It does not prohibit discrimination because of political animus towards one's spouse. Id. at

7   944.   Thus, in Chen the court of appeal affirmed the trial court decision granting the

8   defendant's motion for nonsuit of the plaintiff's claim for marital status discrimination because

9   "[a]ny arguable adverse action was the result of having a relationship (whether married or not)

10  with a *particular* man, and not just because he was a fellow employee, but because he was

11  allegedly on the 'outs' with the then regnant management of the district attorney's office." Id.

12         The only reasonable interpretation of the facts as pled here is that defendant Aguirre

13  threatened to fire plaintiff Chapin not because he was married, but because he had a

14  relationship with a *particular* woman – Loraine Chapin –   with whom Aguirre was on the

15  "outs."   Under Chen, such adverse action is clearly not prohibited by FEHA. Moreover,

16  plaintiffs Chapin and Castleman, both lawyers, could not have reasonably believed that such

17  action was prohibited by FEHA in light of Chen.  In other words, to the extent Chapin and

18  Castleman believed, based on a mistake of law, that they were complaining of conduct

19  prohibited by FEHA, such mistake was, as a matter of law, unreasonable.  Accordingly, they

20  are not protected under § 12940(h) from retaliation for their complaints, and the motion to

21  dismiss Count Five is granted as to both defendants for failure to state a claim.

22

23  **B.     Defendant Aguirre's Motion to Dismiss Counts Five Through Nine, Eleven**
    **and Twelve based on governmental immunity**

24

25         Defendant Aguirre moves to dismiss Counts Five through Nine as well as Counts

    Eleven and Twelve on the ground that he is entitled to statutory immunity. Defendant Aguirre

26  begins with the premise that the "Tort Claims Act and cases interpreting it make clear that in

27  California public *employee* liability is the exception, not the rule."  Memorandum in Support

28  of Defendant Aguirre's Motion to Dismiss at 20:20-21 (emphasis added).  However, in

1   actuality, the Federal Tort Claims Act "establishes the basic rules that public *entities* are

2   immune from liability except as provided by statute (§ 815, subd. (a)), [but] that public

3   *employees* are liable for their torts except as otherwise provided by statute (§ 820, subd. (a))."[1]

4   Caldwell v. Montoya, 10 Cal.4th 972, 980 (1995); see also Taylor v. City of Local Angeles

5   Department of Water and Power, 144 Cal.App.4th 1216, 1238 (2006) (explaining that under

6   the California Tort Claims Act, "public employees are liable for their torts *unless* a statute

7   provides otherwise") (emphasis added).

8       *1.*    ***Government Code 820.2***

9          Section 820.2 provides an exception to tort liability for public employees.  California

10   Govt. Code 820.2 provides in relevant part:

11

12          Except as otherwise provided by statute, a public employee is not liable for an
       injury resulting from his act or omission where the act or omission was the result

13          of the exercise of the discretion vested in him, whether or not such discretion be
       abused.

14

15   It is defendant Aguirre's burden to prove on a motion to dismiss that, as a matter of law, he is

16   entitled to immunity under this provision.

17          The inquiry here is whether the acts of defendant Aguirre that underlie plaintiffs'

18   various claims were discretionary acts within the meaning of section 280.2.  Defendant

19   Aguirre's reliance on the definition of "discretionary act" set forth in  Burgdorf v. Funder, 246

20   Cal.App.2d 443, 449 (1966) is unavailing.  Despite the fact that defendant Aguirre represents

21   the case to be a 1996 case, it is actually a 1966 case that was decided before the seminal

22   California Supreme Court case of Johnson v. State, 69 Cal.2d 782 (1968).  Moreover, in

23   Johnson, the California Supreme Court eschewed Burgdorf's mere semantic approach to

24   construing the meaning of the term "discretionary" as used in § 820.2 in favor of an approach

25   ────────────────

26      [1]  Colome v. State Athletic Comm., 47 Cal.App.4th 1444 (1996), cited by defendant

27   Aguirre, is not to the contrary.   In that case, the court recognized that immunity for

28   governmental *entities* is the rule and that liability is the exception.  Id. at 1454-55.

1   that takes into account the public policy considerations behind granting qualified immunity.

2   See Johnson, 69 Cal.2d at 788-789, 794-95.

3          As explained in the later California Supreme Court case of Caldwell, supra, the

4   "workable definition" of discretionary act to be gleaned from Johnson "draws the line between

5   'planning' and 'operational' functions of government.'" 10 Cal.4th at 981 (quoting Johnson,

6   69 Cal.2d at 793-94).   In other words:

7

8          Immunity is reserved for those "basic policy decisions [which have] ... been
           [expressly] committed to coordinate branches of government," and as to which
9          judicial interference would thus be "unseemly." ( Id. at p. 793, italics in
           original.) Such "areas of quasi-legislative policy-making ... are sufficiently
10         sensitive" (id. at p. 794) to call for judicial abstention from interference that
           "might even in the first instance affect the coordinate body's decision-making
11         process" ( id. at p. 793).

12         On the other hand, said Johnson, there is no basis for immunizing lower-level,
           or "ministerial," decisions that merely implement a basic policy already
13         formulated. (Johnson, supra, 69 Cal.2d at p. 796.)  Moreover, we cautioned,
           immunity applies only to deliberate and considered policy decisions, in which
14         a "[conscious] balancing [of] risks and advantages ... took place. The fact that
           an employee normally engages in 'discretionary activity' is irrelevant if, in a
15         given case, the employee did not render a considered decision. [Citations]." ( Id.
           at p. 795, fn. 8.).

16

17   Caldwell, 10 Cal.4th at 981.

18         In Caldwell, the plaintiff was a former school superintendent who brought claims for

19   breach of contract, for violation of FEHA, and for retaliatory discharge in violation of public

20   policy against members of  a school board who voted against renewing his contract for

21   employment.  Applying the standard set forth supra, the court concluded that the school board

22   was immune under § 820.2."  Id. at 982.  Noting that it had previously held that school district

23   trustees must have immunity for inquiring into a superintendent's fitness because, inter alia,

24   "[t]here is a vital interest in securing free and independent judgment of school trustees in

25   dealing with personnel problems," id., the court concluded that the final decision to terminate

26   the superintendent must be entitled to the same protection.

27         In support of its decision, the court noted that the statutes "specifically limit the length

28   of a superintendent's contract and otherwise place the superintendent's employment within the

- 7 -

1   sole authority and discretion of the district's governing board," thereby satisfying the

2   requirement that the matter be "'expressly entrusted to a coordinate branch of government at

3   its highest level.'" Id. (citing Johnson, 69 Cal.2d at 793). It further explained that because the

4   superintendent was "the district's foremost appointed official, with primary responsibility for

5   representing, guiding, and administering" the district, the "board's choice about who should

6   occupy this crucial post is therefore a peculiarly sensitive and subjective one, with fundamental

7   policy implications." Id. at 983. The court concluded:

8       Where such an important policy issue is at stake, it would be unwise and
        unseemly to hold individual board members personally accountable at law for
9       things they said or considered in the course of deliberations, or for their
        subsequent explanations of their decision. [citation omitted]. Accordingly, the
10      board's collective determination whether to hire or fire a person as the district's
        superintendent must be considered a basic policy decision, immune form civil
11      damage actions that seek to hold individuals board members liable for the
        motives behind their votes.

12

13  Id. Finally, later in the opinion, the court concluded that "[w]hen elected school board

14  members, representing their constituencies, decide in whom they will repose confidence as the

15  chief executive, policy architect, and personal symbol of a diverse public school system, they

16  engage in the quintessential discretionary act of government." Id. 988.

17      Although Caldwell involved a termination, defendant Aguirre has failed to demonstrate

18  it is controlling authority here. Taking as true the allegations of the complaint, plaintiffs were

19  trial attorneys who played no role in formulating policy. See FAC ¶¶ 9, 10. Thus, unlike the

20  plaintiff in Caldwell, plaintiffs here cannot, at this juncture, be said to "occupy a crucial post"

21  so that the decision as to who should fill their position was "a peculiarly sensitive and

22  subjective one, with fundamental policy implications" rather than an a decision that merely

23  implemented a basic policy already formulated. Id. at 983.

24      The crux of defendant Aguirre's argument for immunity is that "[c]ity attorneys have

25  always been among those public officials who are vested with discretionary authority and are

26  immune from their exercise of that discretion even if the discretion is erroneous, malicious or

27  abused." Memo. in Support of Defendant Aguirre's Motion to Dismiss at 21:28-22:2.

28  However, this argument completely ignores the fact that the applicable test for immunity under

- 8 -

1    § 820.2 focuses not on the government employees's job title or day-to-day job duties but,

2    rather, on the nature of the act or omission upon which the employee's liability is predicated.

3    See Caldwell, 10 Cal.4th at 981 (noting that "[t]he fact that an employee normally engages in

4    'discretionary activity' is irrelevant if, in a given case, the employee did not render a

5    considered decision").

6         Moreover, Miller v. Hoagland, 247 Cal.App.2d 57 (1966), the one case defendant

7    Aguirre cites involving a defendant who was a city attorney, is not authority for the proposition

8    that defendant Aguirre is entitled to §820.2 immunity here. In Miller, which was also decided

9    before Johnson, the plaintiff sued a city attorney for defamation. In the context of representing

10    the city as counsel of record in a previous case, the city attorney had made the allegedly

11    defamatory statements in a "letter in the nature of an informal brief" that was presented to a

12    judge in the earlier case in an attempt to persuade the judge to rule in the city's favor. Id. at

13    59. In affirming the trial court's decision in the city attorney's favor, the court of appeal

14    concluded, without analysis, that the statements in the letter were the result of the exercise of

15    discretion. Given Miller's lack of analysis regarding the discretionary nature of the act at

16    issue, the different capacities in which Miller and defendant Aguirre were acting, and the fact

17    that Miller was decided prior to Johnson, Miller is not authority for the proposition that the acts

18    here, which were performed by defendant Aguirre in his role as an administrator and not as an

19    attorney representing a client in a court matter, are of a similarly discretionary nature.

20         Nor do the other cases upon which defendant Aguirre relies dictate that he is entitled

21    to immunity.

22         In Kemmerer v. County of Fresno, 200 Cal.App.3d 1426 (1988), the plaintiff, a civil

23    service employee, brought an action against the County of Fresno and two of his superiors after

24    his superiors investigated him for misconduct and recommended that he be placed in a

25    disciplinary proceeding. As a result of the disciplinary proceeding, he was dismissed from

26    County service, although on appeal his discipline was reduced from termination to a letter of

27    reprimand that was placed in his personnel file. After he was reinstated, he sued the County

28    and his superiors, alleging, inter alia, tortious breach of the covenant of good faith and fair

1   dealing in his employment contract, intentional infliction of emotional distress, and intentional

2   inducement of breach of contract arising out of the investigation and initiation of the

3   disciplinary proceedings.

4          The court of appeal began its analysis with mention of Burgdorf and its definition of

5   "discretionary act" as "one which requires the exercise of judgment or choice," 200

6   Cal.App.3d at 1437 (quoting Burgdorf, 246 Cal.App.2d at 449), despite the fact that, as

7   discussed supra, the Burgdorf definitional approach has been abandoned. See Johnson, 69

8   Cal.2d at 787-790; Caldwell, 10 Cal.4th at 981 (explaining that Johnson reasoned that "almost

9   all acts involve some choice among alternatives, and the statutory immunity thus cannot

10  depend upon a literal or semantic parsing of the word 'discretion'"). Then, after noting

11  Johnson's emphasis on abstention in cases where a government employee is engaged in basic

12  policy decisions, the court in Kemmerer concluded  that "the decision . . . to institute

13  disciplinary proceedings against [the plaintiff] was a policy decision involving the exercise of

14  discretion" because

15          [t]he decision whether or not to initiate disciplinary proceedings and what
            discipline to impose is placed initially on the department head and the decision
16          is entirely within his discretion.  The decision involves the exercise of analysis
            and judgment as to what is just and proper under the circumstances and is not
17          a purely ministerial act.

18
    200 Cal.App.3d at 1438.  The propriety of the court of appeal's focus on the fact that the
19
    decision involved "the exercise of analysis and judgment" is highly questionable in light of
20
    Johnson.  However, the court of appeal also concluded that
21

22          there are strong policy considerations in favor of upholding immunity.  [The
            defendants] investigated allegations of misconduct on the part of Kemmerer,
23          allegations which were later found to be partially true by the civil service
            commission although it did reduce the disciplinary action taken.  They then
24          made the recommendation that he be dismissed from County service.  If every
            public entity employee who was found to have committed an act of misconduct
25          and later disciplined were allowed to bring a tort action against his co-workers
            and superiors, this would certainly bode ill for the continuing efficiency and
26          morale of the civil service commission.  Supervisors within the civil service
            system would not be able to fulfill their function without the overhanging threat
27          of legal action from employees who become subject to discipline.

28
    Id. at 1438-39.

                                          - 10 -                              05CV1906

In the present case, defendant Aguirre is not being sued for initiating disciplinary proceedings or for imposing discipline for misconduct by plaintiffs. Thus, <u>Kemmerer</u> is not directly on point. Moreover, because defendant Aguirre is not being sued for conduct involving the formal discipline of plaintiffs, the public policy considerations present in <u>Kemmerer</u> is not present here. Furthermore, because the court in <u>Summers v. City of Cathedral City</u>, 225 Cal.App.3d 1047, 1064 (1990), also cited by Aguirre, concluded that the facts before it were "indistinguishable" from those in <u>Kemmerer</u>, <u>Summers</u> is similarly not controlling authority here.

Although defendant Aguirre suggests that <u>Kemmerer</u>, <u>Summers</u> and <u>Caldwell</u> should be broadly read as authority for the proposition that all employment-related decisions are discretionary and subject to immunity, the later case of <u>Taylor</u>, *supra*, counsels against such an interpretation. In <u>Taylor</u>, the plaintiff brought a claim for retaliation pursuant to FEHA. He claimed that because he opposed race discrimination against his subordinate, he was, *inter alia*, stripped of his supervisory position; threatened with a change in his work schedule; barred from completing supervisory certification courses; embarrassed in front of subordinates; excluded from meetings and deprived of information necessary to carry out his duties; and labeled a troublemaker to prospective supervisors in other groups. The defendant supervisor sought immunity under § 820.2. However, the court of appeal determined "that the acts alleged here do not fit within the type of policy decisions that the Supreme Court determined would be immune under the statute." 144 Cal.App.4th at 1239. It explained that "decisions regarding job assignments, training and promotion may not be characterized as" the type of "'quasi-legislative policy-making'" decisions that should not be subject to judicial interference. <u>Id.</u> (quoting <u>Barner v. Leeds</u>, 24 Cal.4th 676, 685 (2000)). Thus, it held that "the alleged retaliatory actions . . . as pleaded, are not the type accorded discretionary immunity under section 820.2." <u>Id.</u>

As can be seen, there is no blanket immunity for governmental employers for employment-related decisions as defendant Aguirre contends. Rather, where an employee sues a former employer, the California courts have carefully considered the circumstances of each

- 11 -

1   case and the facts underlying each claim.  Consequently, the court now turns to the specific

2   claims asserted against defendant Aguirre.

3         i.     *Count Five*

4        As noted *supra*, in Count Five, plaintiffs allege that defendants retaliated against them

5   in violation of California Government Code § 12490, et seq., by firing them because they

6   opposed what they believed to be unlawful marital status discrimination.  Because defendant

7   Aguirre is entitled to dismissal of this count on other grounds, the court need not determine

8   whether he would be entitled to dismissal of this count pursuant to § 820.2.

9         ii.    *Count Six*

10        In Count Six, plaintiffs allege they were retaliated against in violation of California

11   Labor Code § 1102.5, which prohibits an employer from retaliating against an employee "for

12   disclosing to a government or law enforcement agency, where the employee has reasonable

13   cause to believe that the information discloses a violation of state or federal statute, or a

14   violation or noncompliance with a state or federal rule or regulation."  Section 1102.5 also

15   prohibits retaliation "against an employee for refusing to participate in an activity that would

16   result in a violation of a state or federal statute, or a violation or noncompliance with a state

17   or federal rule or regulation."  As the California court of appeal has explained, to afford §

18   820.2 immunity to a government employer who terminates a plaintiff "even though such

19   discharge was a retaliatory act expressly prohibited by" a whistleblower statute such as

20   § 1102.5 "would emasculate the entire effect and purpose of the statute." <u>Southern California</u>

21   <u>Rapid Transit District v. Superior Court</u>, 30 Cal App. 4th 713, 726 (1994); <u>see also</u> <u>Shoemaker</u>

22   <u>v. Myers</u>, 2 Cal. App.4th 1407, 1425 (1992) (concluding that allowing immunity pursuant to

23   § 821.6 in actions involving violations of Gov. Code 19683, a whistleblower statute, "would

24   largely emasculate the latter section and thereby frustrate the legislative purpose behind its

25   enactment."). Although <u>Southern California Rapid Transit District</u> and <u>Shoemaker</u> involved

26   different whistleblower statutes, their reasoning is equally applicable here.  Accordingly, the

27

28

05CV1906

1    motion to dismiss Count Six pursuant to § 820.2 is denied.[2]

2          *iii.    Counts Seven and Eight*

3          In Counts Seven and Eight, plaintiffs allege discrimination and retaliation in violation

4    of Labor Code § 232.5, which precludes an employer from discriminating or retaliating against

5    an employee who discloses information about the employer's working conditions or protests

6    the employer's instruction not to disclose information about the employer's working

7    conditions.  At this juncture, defendant Aguirre has failed to sufficiently articulate the basic

8    policy decision he contends is at issue here so as to demonstrate as that, as a matter of law, the

9    acts upon which this count is predicated were in the nature of "basic policy decisions" rather

10   than merely the implementation of "a basic policy already formulated." Caldwell, 10 Cal.4th

11   at 981. However, by this conclusion, the court does not intend to preclude defendant Aguirre,

12   in the context of a summary judgment motion, from shedding further light on what he contends

13   to be the applicable policy. Accordingly, defendant Aguirre has failed to demonstrate that he

14   is entitled to dismissal of these claims.

15          *iv.    Count Nine*

16          In Count Nine, plaintiff Castleman alleges that defendant Aguirre violated Labor Code

17   § 432.3, which makes it unlawful for an employer to require an employee to agree in writing

18   to any term or condition which is known by the employer to be prohibited by law.  Plaintiff

19   Castleman alleges that defendant Aguirre violated this provision by requiring her to sign a

20   severance agreement that forbid her to speak about the conditions of her employment.

21   Defendant Aguirre, at this juncture, has failed to demonstrate that the act of requiring plaintiff

22   Castleman to sign an agreement with such a provision was in the nature of "a basic policy

23   decision" rather than the mere implementation of a basic policy decision already formulated.

24   Id.  Again, by this conclusion, the court does not intend to preclude this issue from being

25   _____

26   [2] At oral argument, defendants challenged this claim on the ground that plaintiff fail to state a claim for whistleblowing under the statute.  Because defendants did not raise this argument in their papers, the court declines to consider it at this time.  See Kim v. Kang, 154

27   F.3d 996, 1000 (9th Cir. 1998) (declining to consider argument raised for the first time in the reply brief).  To the extent that defendants, for the first time at oral argument, challenged

28   plaintiffs' other state claims on the merits, the court declines to consider those challenges as well.

1   revisited in the context of a summary judgment motion.  Accordingly, the motion to dismiss

2   Count Nine is denied.

3          v.    *Counts Eleven and Twelve*

4        In Counts Eleven and Twelve, plaintiffs allege that they were defamed.  Defendant

5   Aguirre has failed to demonstrate that the making of the alleged defamatory statements was

6   in the nature of a "'basic policy decision[]' made at the 'planning' stage" of the operations of

7   his office rather than the implementation of an already-formulated policy decision. Taylor, 144

8   Cal.App.4th at 1238-39 (quoting Barner, 24 Cal.4th at 685).  As noted *supra*, although the city

9   attorney in Miller was found to be immune for making defamatory statements, such statements

10   were made by the city attorney in his capacity as legal counsel in the context of a judicial

11   proceeding.  Here, defendant Aguirre was not acting in such a capacity.

12        The facts of the present case are more analogous to those in Sanborn v. Chronicle

13   Publishing Co., 18 Cal.3d 406 (1976).  In that case, the California Supreme Court held that a

14   city clerk who made defamatory statements to the media in the course of his official duties was

15   not entitled to immunity under § 820.2 because a "governmental officer's discussions with the

16   public or press regarding the functioning of his office would . . . fall within the category of

17   routine, ministerial duties incident to the normal operations of that office."  Id. at 415.

18   Although here the alleged defamatory statements were made to others in the office rather than

19   to the public or the press, discussions with other employees would also appear to fall within

20   the "category of routine, ministerial duties incident to the normal operations" of the City

21   Attorney's Office.  Id.; see also McQuirk v. Donnelley, 189 F.3d 793, 799 (1999) (concluding

22   that although sheriff's decision to provide references to other law enforcement agencies about

23   past employees was in the nature of a policy decision, the decision as to what to include in the

24   reference was "an operational judgment rather than a planning judgment" and, therefore,

25   sheriff was not entitled to § 820.2 immunity in suit for defamation arising out of reference

26   given).  Accordingly, defendant Aguirre is not entitled to qualified immunity under § 820.2.

27   **2.    California Civil Code § 47(c)**

28   Alternatively, defendant Aguirre seeks dismissal of Counts Eleven and Twelve pursuant

1  to California Civil Code § 47(c).  Pursuant to § 47(c), certain communications are privileged

2  if made "without malice."  Here, plaintiffs allege that defendant Aguirre made the allegedly

3  defamatory statements "with malice."  FAC ¶¶ 145, 152.  Whether the statements were made

4  with or without malice is a factual issue that cannot be determined as a matter of law on a

5  motion to dismiss.  Accordingly, defendant Aguirre's motion to dismiss Counts Eleven and

6  Twelve pursuant to section 47 (c) is denied.

7       **3.     California Civil Code § 47(a)**

8            Defendant Aguirre also seeks dismissal of Counts Eleven and Twelve pursuant to

9  California Civil Code § 47(a), which provides that a statement made in the proper discharge

10 of an official duty is privileged.  As explained in McQuirk, "the California Supreme Court

11 defines such statements as those made in the discharge of an official duty that are related to

12 a policy-making function." 189 F.3d at 801.  And, the "requirement that the statements at issue

13 be related to the exercise of a policy-making function is closely related to the inquiry into

14 whether an official was acting at a planning, as opposed to an operational, level under §

15 820.2."  Id.  For the reasons defendant Aguirre is not entitled to immunity for his alleged

16 defamatory statements under § 820.2, he is not entitled to immunity for such statements under

17 § 47(a).  See id. ("Because we concluded that Donnelley was not immune from liability under

18 § 820.2 because his actions were operational judgments, we also conclude that he was not

19 acting in a policy-making role.  Therefore, his statements were not privileged pursuant to §

20 47(a) . . . .").  Accordingly, defendant Aguirre's motion to dismiss Counts Eleven and Twelve

21 pursuant to § 47(a) is denied.

22      **4.     Miscellaneous Immunities**

23           Finally, defendant Aguirre has failed to demonstrate that he is entitled to immunity

24 under California Government Code §§ 820.4 and 821.6.

25      **C.     City's Motion to Dismiss Counts Five Through Twelve pursuant to § 820.2**

26           The City move to dismiss Counts Five Through Twelve pursuant to § 820.2.  Although

27 § 820.2 on its face applies to individual employees, pursuant to California Government Code

28 § 815.2(b) "a public entity is not liable for an injury resulting from an act or omission of an

1   employee of the public entity where the employee is immune from liability." Therefore, to the

2   extent that defendant Aguirre is entitled to dismissal of plaintiffs' claims pursuant to § 820.2,

3   the City is also entitled to dismissal.  See Shoemaker, 2 Cal.App.4th at 1422 ("If a public

4   employee is immune from prosecution, section 815.2 , subdivision (b), also immunizes the

5   public employer.").

6         As discussed *supra*, Count Five fails to state a claim.  Therefore, the City is entitled to

7   dismissal of Count Five on this ground, and the court need not determine whether, had

8   plaintiffs stated a claim, the City would be entitled to immunity. For the reasons that defendant

9   Aguirre is not entitled to dismissal of Counts Five through Ninth and Counts Eleven and

10  Twelve pursuant to § 820.2, neither is the City.  However, as discussed *infra*, the City is

11  entitled to dismissal of Counts Eleven and Twelve on other grounds.  Finally, the court need

12  not analyze Count Ten in the context of the present arguments because, as discussed *infra*, the

13  City is entitled to dismissal of Count Ten for other reasons.

14        **D.**    **City's Motion to Dismiss Count Ten**

15        In Count Ten, plaintiffs bring a claim for wrongful termination against the City, alleging

16  that they were terminated in violation of public policy.  The City contends that it is entitled to

17  immunity pursuant to California Government Code § 815(a), which provides in relevant part

18  that "*[e]xcept as otherwise provided by statute*" a public entity such as a municipality "is not

19  liable for an injury, whether such injury arises out of an act or omission of the public entity or

20  a public employee or any other person."  The City contends that pursuant to the terms of

21  § 815(a), a common law cause of action (as opposed to a statutorily-created one) cannot be

22  asserted against it.  While the City is, perhaps, a bit broad in its interpretation (one could

23  surmise that the legislature could enact a statute providing that certain common law causes of

24  action could be asserted against a public entity without actually codifying those common law

25  causes of action), plaintiffs have failed to demonstrate that there is an applicable statute

26  allowing for the maintenance of a wrongful termination claim against the City in this case.

27        Plaintiffs' reliance on a quotation from Palmer v. Regents, 107 Cal.App. 4th 899 (2003)

28  is unavailing.  In that case, the court simply noted that it had previously held in an unpublished

1   decision in the same case that Palmer "had stated a 'classic' common law cause of action for

2   discharge in violation of public policy" against a governmental entity despite the trial court's

3   construction of the complaint as raising only a cause of action for discharge in violation of

4   Labor Code § 1102.5. Id. at 902. Absent from this portion of the opinion is any discussion

5   of the government entity's entitlement to immunity under § 815.2. Moreover, later in the same

6   decision, the court noted that the government entity in that case had not argued in either appeal

7   that the entity was immune from liability under § 815. Id. at 910. As for plaintiffs' citation

8   of Shoemaker, plaintiffs fail to explain the basis of their reliance on that case, and the basis for

9   such reliance is not evident.

10          Finally, in light of the fact that § 815.2 limits public entity liability to liability "provided

11   by statute," it is too great a leap to conclude that because plaintiffs are not barred by § 815.2

12   from bringing a statutory claim for violation of Labor Code § 1102.5, they are not barred from

13   bringing a common law cause of action for wrongful termination in violation of public policy

14   simply because § 1102.5 is the source of the public policy. Accordingly, the City's Motion to

15   Dismiss Count Ten is granted.

16

17          **E.     City's Motion to Dismiss Counts Eleven and Twelve Pursuant to
               Government Code § 818.8**

18
           The City also seeks dismissal of Counts Eleven and Twelve pursuant to California
19
     Government Code § 818.8, which provides that "[a] public entity is not liable for an injury
20
     caused by misrepresentation by an employee of the public entity, whether or not such
21
     misrepresentation be negligent or intentional." Plaintiffs contend that § 818.8 is not applicable
22
     here because the complaint alleges that defendant Aguirre acted with malice. However,
23
     plaintiffs fail to cite any authority suggesting that § 818.8 immunity is unavailable to a
24
     municipality where its employee's defamatory statements were made with malice. Moreover,
25
     the legislative history clarifies that a public entity does not lose its immunity where the
26
     employee's misrepresentation was made with malice. According to the Senate Legislative
27
     Committee Comment:
28

1  This section provides public entities with an *absolute immunity* from liability for
   negligent or intentional misrepresentation. *A similar immunity is provided public*
2  *employees by Section 822.2, except that an employee may be held liable if he is*
   *guilty of* actual fraud, corruption or *actual malice.*
3

4  Accordingly, the court finds that the City is entitled to dismissal of Counts Eleven and

5  Twelve pursuant to § 818.8.  Because the City is entitled to dismiss of these claims pursuant

6  to § 818.8, the court need not determine whether the City would also be entitled to dismissal

7  of these claims pursuant to § 47(a) or (c).

8  **IV.     Conclusion**

9  That portion of defendant Aguirre's motion to dismiss that attacks plaintiffs' state law

10 claims is granted as to Count Five but denied as to the remaining state law claims.  That

11 portion of the City's motion to dismiss that attacks plaintiffs' state law claims is granted as to

12 Counts Five, Ten, Eleven and Twelve but denied as to the remaining state law claims.

13 **IT IS SO ORDERED.**

14

15 DATED:  _____ ,2007

16                                                  _____
17                                                  **JOHN S. RHOADES, SR.**
                                                    United States District Judge
18 cc:     All parties

19

20

21

22

23

24

25

26

27

28

05CV1906